AO 98 (Rev. 01/09; MD Rev 6/09) Defendant's Appearance Bond

# UNITED STATES DISTRICT COURT
## for the
### District of Maryland

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. TDC-16-0437 |
| **Anatoly Fedorovsky** | ) | |
| *Defendant* | ) | |

FILED ___ ENTERED ___
LODGED ___ RECEIVED ___

NOV -3 2016

AT ___ GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ___ DEPUTY

## DEFENDANT'S APPEARANCE BOND AND AGREEMENT TO FORFEIT PROPERTY

To obtain the defendant's release, we jointly and severally agree to forfeit the following cash or other property to the United States of America if this defendant fails to appear as required for any court proceeding or for the service of any sentence imposed as may be noticed or ordered by any court, or fails to comply with any conditions of release set by the court considering this matter *(describe the cash or other property and any claim, lien, mortgage, or other encumbrance on it)*:
**Defendant's residence located at 41-30 Rys Terrace, Fair Lawn, New Jersey 07410 within 10 days of October 31, 2016.**

*Ownership.* We declare under penalty of perjury that we are the sole owners of this property and that it is not subject to any claim, lien, mortgage, or other encumbrance except as disclosed above. We promise not to sell, mortgage, or otherwise encumber the property, or do anything to reduce its value while this agreement is in effect. We deposit with the court the following ownership documents, including any encumbrance documents *(list all documents and submit as attachments)*:

*Surety Information.* We understand that the court and the United States of America will rely on the surety information in approving this agreement.

*Conditions of Release.* We state that we have either read all court-ordered conditions of release imposed on the defendant or had them explained to us.

*Continuing Agreement.* Unless the court orders otherwise, this agreement remains in effect during any appeal or other review until the defendant has satisfied all court notices, orders, and conditions.

*Exoneration of sureties.* This agreement is satisfied and ends if the defendant is exonerated on all charges or, if convicted, the defendant reports to serve any sentence imposed.

*Forfeiture.* If the defendant fails to obey all conditions of release, court notices, and orders to appear, the court will immediately order the property forfeited and on motion of the United States of America may order a judgment of forfeiture against the signing parties and their representatives, jointly and severally, including interest and costs.

AO 98 (Rev. 01/09; MD Rev 6/09) Defendant's Appearance Bond

I swear under penalty of perjury that the above information is true and agree to the conditions of this agreement.

Date: October 31, 2016

City and state: Fair Lawn, NJ

_____
Defendant's signature

Anatoly Fedorovsky
Property owner's printed name

_____
Property owner's signature

Lana Fedorovsky
Property owner's printed name

_____
Property owner's signature

_____
Property owner's printed name

_____
Property owner's signature

Sworn and signed before me.

CLERK OF THE COURT

Date: 10/31/16

_____
Signature of Clerk or Deputy Clerk

Approved.

Date: 10/31/16

_____
Judge's signature

**U.S. Probation and Pretrial Services**
# MEMORANDUM

DATE: March 31, 2017

TO: The Honorable Theodore D. Chuang
U.S. District Court Judge

FROM: Andrew J. Dziopa
U.S. Pretrial Services Officer

SUBJECT: Anatoly Fedorovsky
Case Number: 8:16-cr-00437-TDC
RELEASE STATUS REPORT

## RELEASE STATUS

The above-named defendant is scheduled to appear before Your Honor on April 5, 2017, for sentencing, having pled guilty on October 31, 2016, to Bribery, in violation of 18 U.S.C. § 201(b)(1)(A) and (C). On the same date, Your Honor released the defendant on his personal recognizance with pretrial services supervision and the following additional conditions:

- Report on a regular basis to the supervising officer. The defendant shall promptly obey all reasonable directions and instructions of the supervising officer.
- Post with the court the following proof of ownership of the designated property, or the following amount or percentage of the above-described sum: Post the equity of the defendant's residence located at 41-30 Rys Terrace, Fair Lawn, New Jersey 07410 (within 10 days of October 31, 2016).
- Maintain or actively seek employment as approved by the U.S. Pretrial Services Officer.
- Surrender any passport to: the Clerk's office upon release on October 31, 2016.
- Obtain no passport.
- Abide by the following restrictions on personal association, place of abode, or travel: Travel restricted to the Continental United States.

## ADJUSTMENT TO SUPERVISION

Mr. Fedorovsky resides in New Jersey and is currently being supervised by Officer Angel Matos in the District of New Jersey. Officer Matos described the defendant's adjustment to supervision as satisfactory. He has reported as directed and complied with all other conditions of release. On March 31, 2017, an automated criminal history inquiry revealed no new arrests or warrants.

Re: Anatoly Fedorovsky
Page: 2

### RECOMMENDATION

Should the defendant be sentenced to a term of imprisonment, I respectfully recommend he be continued on the previously imposed release conditions pending voluntary surrender.

Beverly McCabe
Supervisory U.S. Pretrial Services Officer

cc:  David Salem, AUSA
     Albert Dayan, Defense Counsel
     Irma Dasovic, USPO

## ATTACHMENT A
### Statement of Facts

This Office and the Defendant, ANATOLY FEDOROVSKY, agree that if this case proceeded to trial, this Office would prove the facts set forth below beyond a reasonable doubt. They further stipulate and agree that these are not all of the facts that this Office would prove if this case proceeded to trial.

At all times relevant to the Information, the Defendant, ANATOLY FEDOROVSKY ("FEDOROVSKY"), was the CEO of Corporation A, a company that dealt in, among other things, software protection, licensing, and security. FEDOROVSKY also was a naturalized United States citizen of Ukrainian origin.

Between in or about July 2015, and in or about December 2015, in the District of Maryland and elsewhere, FEDOROVSKY entered into contract negotiations with a public official ("CW-1") then working for the Department of Energy ("DOE"), in the hope that CW-1 would find a DOE contract that would be suitable for FEDOROVSKY and Corporation 1. Specifically, on or about July 17, 2015, Individual A asked CW-1 to assist FEDOROVSKY in getting DOE contracts, and advised CW-1 that FEDOROVSKY would contact CW-1.

Subsequently, on or about August 11, 2015, FEDOROVSKY contacted CW-1 by telephone and e-mail to indicate his interest in securing DOE contracts for Corporation 1. Between July and October 2015, FEDOROVSKY and Individual A discussed with CW-1 at least one contract suitable for Corporation A. During this time period, CW-1 also introduced FEDOROVSKY to an undercover law enforcement officer posing as a DOE contract specialist ("UCE-1").

On or about September 9, 2015 FEDOROVSKY met with CW-1 and UCE-1 in Gaithersburg, Maryland, and was provided with information on what FEDOROVSKY believed was an available DOE contract for computer services - the so-called "SHAPE" contract. FEDOROVSKY suggested to UCE-1 several methods that could be used to communicate about contract details outside of official communications. Among other things, FEDOROVSKY and UCE-1 discussed the fact that UCE-1 could provide confidential bidding information to FEDOROVSKY to assist FEDOROVSKY in obtaining the contract.

On or about October 13, 2015, FEDOROVSKY e-mailed UCE-1 (at UCE-1's personal e-mail account) a draft bid for the SHAPE contract in the amount of $774,000. FEDOROVSKY and UCE-1 then discussed by telephone that the lowest bid on the contract (from an unspecified third-party contractor) was approximately $1,350,000. FEDOROVSKY subsequently e-mailed UCE-1 (this time, at UCE-1's official DOE e-mail address) a formal bid on the contract, in the amount of $1,025,000.

On or about October 28, 2015, FEDOROVSKY met UCE-1 at a restaurant in Gaithersburg, Maryland. During that meeting, FEDOROVSKY and UCE-1 discussed a bribe,

8

The conversation between CW-1 and **FEDOROVSKY** ("**AF**") then proceeded, in relevant part, as follows:

| | |
|---|---|
| AF: | And, uh, well, let's discuss your interest, your - your participation, your involvement. How - how should we - what should we do? |
| UCE-1: | Well, in terms of awarding the contract and after and - ? |
| AF: | Yup. |

\* \* \*

| | |
|---|---|
| AF: | I - I am [unintelligible] you to be [unintelligible], so why - I see it as some - some person and the amount it should be standard probably, you know? |
| UCE: | There's nothing standard. It's an - it's an- it's an agreement, you know. It's not like, I mean, if you've done this in the past, what have you paid in the past? |
| AF: | Uh, maybe five to ten. |
| UCE: | Five to ten? |
| AF: | Yeah. |

\* \* \*

| | |
|---|---|
| AF: | What do you - what do you want? |
| UCE: | So if you say - well, 10% of that would be what? 250 would be $25,000? |
| AF: | No. No. I, uh, I mean, five to ten. Let's say 7% of the total amount. |
| UCE: | Okay, so 7% then of the 200? |
| AF: | That would be almost 70 — |
| UCE: | About 14? |
| AF: | 70K. |

9

In this same conversation, **FEDOROVSKY** also expressed his preference to make payments to UCE-1 through an unrelated third party or company to whom he could send an IRS Form 1099 tax document at the end of the year.

UCE-1 and **FEDOROVSKY** discussed and then agreed that, of the $70,000 total bribe, **FEDOROVSKY** would pay $7,000 in cash up front, on the day of the contract, but before the contract was signed. **FEDOROVSKY** expressed his desire that after the first payment, all future payments would go through a consultant.

On November 17, 2015, **FEDOROVSKY** travelled to Germantown, Maryland, to meet UCE-1 at a restaurant, where **FEDOROVSKY** provided UCE-1 with $7,000 in cash.

Approximately two hours after paying UCE-1, **FEDOROVSKY** entered the DOE Headquarters facility in Germantown, Maryland, and signed what he believed to be a DOE contract - the SHAPE contract - in the amount of $1,025,000, knowing that the conditions of the contract prohibited entering into the contract by means of bribery.

**FEDOROVSKY** agreed to provide the bribe in exchange for CW-1's and UCE-1's favorable treatment in helping Corporation A obtain a DOE contract.

\* \* \*

I have read this statement of facts, and have carefully reviewed it with my attorney. I acknowledge that it is true and correct.

10/31/16
Date

_____
Anatoly Fedorovsky

I am Anatoly Fedorovsky's attorney. I have carefully reviewed every part of this Statement of Facts with him. To my knowledge, his decision to sign it is an informed and voluntary one.

10-31-16
Date

_____
Albert Dayan, Esq.

10