**IN THE UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | |
| | * | |
| **ANATOLY FEDOROVSKY,** | * | **CRIMINAL NO. TDC-16-0437** |
| | * | |
| **Defendant.** | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | ******* | |

**GOVERNMENT'S OPPOSITION TO**
**DEFENDANT'S MOTION FOR RELEASE PENDING APPEAL AND**
**TO STAY IMPRISONMENT PENDING APPEAL AND**
**MEMORANDUM OF LAW IN SUPPORT THEREOF**

The United States of America, by and through undersigned counsel, submits this Opposition to Defendant's Motion for Release Pending Appeal and to Stay Imprisonment Pending Appeal, Docket No. 41, and corresponding Memorandum in Support of Motion for Release Pending Appeal and to Stay Imprisonment Pending Appeal, Docket No. 42, and states as grounds the following:

## FACTUAL HISTORY

In 2015, the FBI conducted a sting operation in which an undercover FBI agent held himself out to be a Department of Energy official with authority over DOE contracts. *See* Plea Agreement, Statement of Facts, at pp. 8-10 (Docket No. 8). The Defendant was the target of the operation. The agent gave the Defendant a DOE email address which the Defendant used to communicate with him, carried a DOE badge when he met the Defendant, discussed with the Defendant the fact that the agent could provide confidential bidding information to the Defendant to assist him in obtaining the

contract, and the Defendant signed the alleged contract at DOE Headquarters facility in Germantown, MD. *See* Statement of Facts, p. 8-10.

On October 31, 2016, the Defendant was arraigned and pled guilty to a one-count Information charging him with bribery in violation of 18 U.S.C. § 201(b)(1)(A). In the written Plea Agreement executed by the Defendant, he admitted that he paid $7,000.00 to an undercover law enforcement officer posing as a Department of Energy official in return for what he believed was a legitimate government contract with the DOE. *See* Plea Agreement, at pp. 8-10.

That same day, the Court released the Defendant on his own recognizance with pretrial supervision until the date of his surrender.

On April 5, 2017, the Court sentenced the Defendant to a term of imprisonment of twelve months and one day, with a surrender date of May 15, 2017.

On May 3, 2017, the Defendant filed a Motion for Release Pending Appeal and to Stay Imprisonment Pending Appeal, Docket No. 41 (the "Release Motion") and corresponding Memorandum in Support of Motion for Release Pending Appeal and to Stay Imprisonment Pending Appeal, Docket No. 42 (the "Release Memo"). The Defendant now argues that he qualifies for release pending appeal under 18 U.S.C. § 3143(b) because: (1) he is not likely to flee or pose a danger to the safety of others or the community; and (2) his appeal will raise a substantial question of law likely to result in reversal and dismissal of the indictment. *See* Release Memo, at p. 1. The Government responded to the first argument in its Response to Opposition filed on May 8, 2017 (Docket No. 44). The Government addresses the Defendant's second argument below.

The Defendant's appeal issue does not raise a substantial question of law which would support the Defendant's release pending appeal under 18 U.S.C. § 3143(b).

## ARGUMENT

1. The Defendant has breached his Plea Agreement, which forecloses his right to contest his conviction.

Paragraph 14a of the Plea Agreement executed by the Defendant included a Waiver of Appeal provision, the language of which tracks as follows:

> The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction.

*See* Plea Agreement, a p. 5, ¶ 14(a). Under the language of the Plea Agreement, then, the Defendant has not only waived his right to appeal -- the very basis for his motion to stay the execution of his sentence -- but has specifically waived the right to appeal his conviction, whether his claims were raised under the rubric of "actual innocence," or, as stated *infra*, the defenses of "impossibility" and "entrapment."

Fedorovsky does not claim that the Court failed to advise him of the appeal waiver, and does not allege that he entered into his plea on the basis of constitutionally defective advice from his counsel. Indeed, he frankly claims that he made a competent decision to plead guilty after months of negotiation between his counsel and the Government and after his attorney had advised him on this very issue that it "could not withstand motion practice." *Defendant's Reply to Government's Opposition to Expedited Resolution of Motion to Stay*, at p. 1 (Docket No. 45) ("Defendant's Reply").

Appeal waivers generally are enforceable, and this Circuit has enforced such waivers in numerous cases. *See, e.g., United States v. Hade*, 480 Fed Appx. 734 (4th Cir. 2012) (waiver precluded challenge to 18 U.S.C. § 2251, statute of conviction for possession of child pornography)*United States v. Bearfield,* 443 Fed Appx. 853, 854 (4th Cir. 2011)(waiver operated to deny defendant right to appeal drug conviction and sentence; *United States v. Woodson,* 369 Fed Appx. 517 (4th Cir. 2010)(waiver foreclosed challenge to drug and weapons conviction and 300-

month sentence); *United States v. Blick*, 408 F.3d 162, 167-69 (4th Cir. 2005) (holding that appeal waiver precluded defendant from appealing his sentence where record established that defendant knowingly and voluntarily waived his right to appeal and issues he raised were in scope of appeal waiver); *U.S. v. Davis*, 954 F.2d 182, 185–86 (4th Cir. 1992) (enforcing a waiver that precluded the defendant from appealing certain convictions). *See also United States v. Wiggins,* 905 F.2d 51, 53 (4th Cir. 1990) ("It is clear that a defendant may waive in a valid plea agreement the right of appeal ... "); *United States v. General*, 278 F.3d 389, 399–401 (4th Cir. 2002) (finding defendant knowingly and voluntarily waived his right to appeal his sentence); *United States v. Brown*, 232 F.3d 399, 402–06 (4th Cir. 2000) (dismissing appeal of sentence, explaining that "[g]iven the explicit nature of the waiver in the plea agreement, its specific mention of § 3742, and the thorough plea colloquy conducted by the district court, we can only conclude that the waiver effectively precludes this appeal.").

A defendant may waive the right to appeal if that waiver is knowing and intelligent. *Blick*, 408 F.3d at 169. To determine whether a waiver is knowing and intelligent, a court examines the background, experience, and conduct of the defendant. *United States v. Broughton-Jones*, 71 F.3d 1143, 1146 (4th Cir. 1995) (finding appeal waiver was knowing and intelligent). Generally, if the district court fully questions a defendant regarding the waiver of his right to appeal during the Fed. R. Crim. P. 11 colloquy, the waiver is both valid and enforceable. *United States v. Johnson,* 410 F.3d 137, 151, 153 (4th Cir. 2005) (finding that U.S. Supreme Court's issuance of *United States v. Book*er, 543 U.S. 220 (2005), after plea agreement was reached did not render defendant's plea unknowing or involuntary, nor did the challenge fall beyond the scope of his pre-*Booker* appeal waiver). The issue, however, ultimately is "evaluated by reference to the totality of the circumstances." *General*, 278 F.3d at 400.

Under that analysis, Fedorovsky's waiver is clearly knowing and intelligent. As he recounts in his most recent motion, he unmistakably knew that "the recipient of the bribe was a law enforcement agent posing as a Department of Energy contract specialist and the bribe was paid in exchange for fictitious favorable treatment…." *Release Memo*, at p. 4. Moreover, those same facts were carefully recited at his Rule 11 colloquy on October 31, 2016, and the Defendant did not in any way question them at that time.

By the Defendant's own competent admission, he agreed to plead guilty, after hours of negotiations by the parties, despite the apparent advice of his attorney that this very issue "could not withstand motion practice." *Defendant's Reply*, at p. 1. He was subjected to a vigorous Rule 11 proceeding, nothing of which he contests in his Motion. His apparent change of heart should not now scuttle the agreement. Fedorovsky represented by his statements at the plea hearing and signature on the Plea Agreement that he had been fully advised about, and understood, the terms of the Plea Agreement, including the facts and the waiver of appeal. And, as part of the Plea Agreement, Fedorovsky specifically agreed to waive any appeal of his conviction. He should not now be permitted to undo this waiver. The Defendant was found guilty of the crime charged as determined by this Court at his arraignment, was sentenced consistent with his Plea Agreement, and thus has no basis for appeal. *See* Fed. R. Crim. P. 11(b)(3).

2. <u>The Defendant has incorrectly interpreted 18 U.S.C. § 201.</u>

Pursuant to 18 U.S.C. § 201(b)(1)(A) – and as specified in his Plea Agreement – the elements of bribery are: (1) the Defendant directly or indirectly gave, offered, or promised something of value; (2) to a public official; and (3) with the corrupt intent to influence the public official in the performance of an official act. Pursuant to his Plea Agreement, the Defendant admitted to paying $7,000.00 to an undercover FBI agent whom he thought was a Department of Energy official so that

the Defendant could receive a favorable DOE contract. *See* Plea Agreement, Statement of Facts, at pp. 8-10. This conduct is prohibited by 18 U.S.C. § 201.

Fedorovsky argues that he is actually innocent of this offense, because he paid money "to a law enforcement officer *posing* as a Department of Energy Contract Specialist," and because the crime involved only "a fake 'public officer' and a fictitious 'official act.'" *See* Release Memo, at pp. 4, 6. He further acknowledges that he may in fact be guilty of "inchoate offenses" such as attempt, but that "he was not charged with and did not plead guilty to" attempt to commit bribery. *See* Release Memo, at p. 6. According to the Defendant, the facts to which he pled guilty do not establish the substantive crime of bribery and hence he is innocent. The Defendant is mistaken in his interpretation of § 201.

a. <u>An undercover officer is a public official under the statute.</u>

A federal agent working undercover in a sting operation is a "public official" under 18 U.S.C. § 201. That statute defines "public official" to mean:

> [a] Member of Congress, the Delegate from the District of Columbia, or Resident Commissioner, either before or after he has qualified, *or an officer or employee* or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof, including the District of Columbia in any official function, under or by authority of any such department, agency, or branch of Government, or a juror[.]

18 U.S.C. § 201(a) (emphasis added). This is true even where the Defendant misapprehends the scope of the public official's duties. *See U.S. v. Romano*, 879 F.2d 1056 (2d Cir. 1989) (finding Environment Protection Agency employee who agreed to plead guilty and then work for law enforcement as an undercover agent was a "public official" under federal bribery statute); *U.S. v. Gjieli*, 717 F.2d 968, 973 (6th Cir. 1983) (noting that the Second, Seventh, Fourth, Fifth and District of Columbia Circuits "have all imposed § 201 liability on bribers who erroneously perceived that

the duties of a public official would give that official the authority to accomplish the desired act"); *c.f. U.S. v. Silvestri*, 719 F.2d 577, 582 (2d Cir. 1983) (finding no error in instructing jury that defendant would not be absolved from § 201 liability simply because actual offer of money was made by government undercover agents). The Second Circuit has explained that "it is legitimate for government agents to act as though they are corrupt, even when they are not, for purposes of prosecuting people under the bribery statute." *Romano*, 879 F.2d at 1060 (finding irrelevant the fact that once EPA agent began cooperating with the government as an undercover agent he would not be able to achieve the objective of the bribe). Indeed, this is the case in every undercover "sting" operation to catch suspected bribers.

The Fourth Circuit has implicitly recognized the use of such undercover operations in bribery prosecutions. The Eastern District of Virginia, addressing sentencing guidelines for bribery, explained that "the Sentencing Commission foresaw the use of undercover agents in detecting bribery offenses, but in no way reduced the liability of defendants caught in such undercover operations." *United States v. Ruffin*, 779 F. Supp. 385, 386 (E.D. Va. 1991) (finding appropriate offense level under Sentencing Guidelines was determined by amount of tax liability defendant agreed to eliminate rather than amount of bribe defendant accepted from undercover agent posing as taxpayer). The Fourth Circuit affirmed, reasoning that "the district court followed the straightforward language of the guideline, which contains no suggestion that a benefit intended to be conferred in return for a bribe should be disregarded when the defendant has dealt with an undercover agent." *United States v. Ruffin*, 974 F.2d 1333 (table), 1992 WL 208539, at *1 (4th Cir. Aug. 31, 1992) ("[Defendant] freely chose to offer to wipe out a tax liability of over $10,000 which he believed to be genuine. We see no fundamental unfairness in punishment which takes that into account.").

Whether the public official, in this case a federal agent, was pretending to have a different title or different official duties is irrelevant. In a case similar to the instant case, the Second Circuit found sufficient evidence of defendant's knowledge that an undercover law enforcement official posing as an immigration official was nevertheless a "public official" under § 201. *U.S. v. Couto*, 119 Fed. App'x 345 (2d Cir. 2005). The undercover agent indicated to the defendant that he had access to federal immigration files, described regional immigration processing centers as "our local offices," repeatedly referred to immigration system as "our system," stated that he possessed an "approval stamp," coached defendant on detection methods, and conversed in immigration terminology about procedures. *Id.* at 347. Similarly, here, an undercover agent held himself out to be a DOE official, gave the Defendant a DOE email address which the Defendant used to communicate with him, carried a DOE badge when he met the Defendant, discussed with the Defendant the fact that the agent could provide confidential bidding information to the Defendant to assist him in obtaining the contract, and the Defendant signed the alleged contract at DOE Headquarters facility in Germantown, MD. Statement of Facts, at pp. 8-10. Thus, there is ample evidence that the Defendant believed the federal agent had the authority to achieve the desired result of the bribe.

Congress intended that the bribery statute be applied broadly. *See United States v. Wilson*, 408 Fed. App'x 798, 806 (5th Cir. 2010) (finding government contractor was public official); s*ee United States v. Westmoreland*, 841 F.2d 572, 577 (5th Cir. 1988) ("[I]t is clear that Congress has cast a broad net...."); *Romano*, 879 F.2d at 1060 ("The [Supreme] Court stressed that the bribery statute was drafted with broad jurisdictional language ... to reach all people performing activities for the federal government, regardless of the form of federal authority."). Section 201(a) is "accurately characterized as a comprehensive statute applicable to all persons performing activities for or on

behalf of the United States." *Dixson v. U.S.*, 465 U.S. 482, 496 (1984). In this case, of course, the person the Defendant bribed was, in fact, employed by the federal government, albeit as an agent of the FBI, who was working in an official capacity. To that extent, he is a public official under § 201. To interpret § 201 to exclude prosecution of a defendant who bribes an undercover agent whom the defendant believes to be a public official would be counter to the goals of the statute and preclude undercover bribery investigations. *See Gijeli*, 717 F.2d at 972 (finding purpose of bribery statute to be "preventing the corruption of a federal official.").

In fact, the Model Federal Jury Instructions include a provision that states "[t]he government does not have to prove that the defendant knew that [the official] was a federal official, as long as the defendant believed he was dealing with a government official." Leonard B. Sand *et al.*, Modern Federal Jury Instructions, Criminal P 16.01 (2016). Even the Sentencing Commission "clearly contemplated the use of this guideline in the context of undercover operations" (*Ruffin*, 779 F.Supp. at 386):

> Offenses involving attempted bribery are frequently not completed because the victim reports the offense to authorities or is acting in an undercover capacity. Failure to complete the offense does not lessen the defendant's culpability in attempting to use public position for personal gain. Therefore, solicitations and attempts are treated as equivalent to the underlying offense.

U.S.S.G. § 2C1.1, Commentary, Background. It follows, then, that bribery is proscribed by federal law whether conducted with an actual public official or with an undercover federal agent acting as the official.[1]

---

[1] Further supporting this argument, entrapment is one of the defenses that can be asserted by a defendant in bribery cases. *See United States v. Sekandary*, 944 F.2d 903 (table), 1991 WL 188228, at *1-3 (4th Cir. Sept. 25, 1991) (finding no basis for entrapment defense where, even though inspector was working with authorities, evidence showed that defendant reached out to inspector first and defendant *sua sponte* offered the bribe). To prove entrapment, "there must be undisputed testimony making it patently clear that an otherwise innocent person was induced to commit the act complained of by trickery, persuasion, or fraud of a government agent." *United States v. Hsieh Hui Mei Chen*, 754 F.2d 817, 821 (9th Cir. 1985) (finding no entrapment as a matter of law where the initial suggestion of bribery came from defendant rather than government agent). In order for a defendant to argue entrapment as a defense for bribery, one of

Accordingly, there is no merit to the argument that the Defendant was actually innocent because the government employed an undercover officer as the recipient of the bribe.

b. The object of the bribe does not need to be attainable in order for the Defendant to have intended to influence an official act.

The fact that the undercover FBI agent could not have granted the DOE contract is not relevant. Courts have found that the focus is on the *Defendant's* intent and action. "[I]t need not be shown that the public official to whom the bribe was offered was actually corrupted by the offer. It is not necessary to show that the official accepted the bribe, and the object of the bribe need not even be attainable to support a conviction for offering the bribe under § 201(b)…. In fact, so long as the money is offered with corrupt intent, the official does not necessarily even need to be aware of the bribe." *United States v. Johnson*, 621 F.2d 1073, 1076 (10th Cir. 1980) (citation omitted); *United States v. Traitz*, 871 F.2d 368, 396 (3d Cir. 1989) ("Provided that the money is offered with corrupt intent, the official does not necessarily even need to be aware of the bribe so long as a bribe is offered or promised with the required intent to influence any official act the crime is committed." (quotation marks and ellipsis omitted)); *cf. United States v. Arthur,* 544 F.2d 730, 734 (4th Cir. 1976) (analyzing jury instruction for bribing government officials in § 656 context) ("Not every gift, favor or contribution to a government or political official constitutes bribery. It is universally recognized that bribery occurs only if the gift is coupled with a particular criminal intent"). "[S]o long as a bribe is 'offered or promised' with the requisite intent 'to influence any official act' the crime is committed." *Johnson*, 621 F.2d at 1076 (quoting *United States v. Jacobs*, 431 F.2d 754, 760 (2d Cir. 1970)).

---

the parties must be a government actor. And so, the fact that the entrapment defense exists presupposes the validity of the government's use of sting operations in bribery prosecutions. The Defendant's time for raising such defenses has since passed and is plainly proscribed by the Plea Agreement he knowingly and voluntarily executed. *See U.S. v. Meyers*, 692 F.2d 823, 836 (2d Cir. 1982) ("We hold that a defendant who fails to assert entrapment as a factual defense at his trial, cannot assert it as a legal defense to his conviction.").

The Sixth Circuit has explained that the "Second, Seventh, Fourth, Fifth and District of Columbia Circuits … have all imposed § 201 liability on bribers who erroneously perceived that the duties of a public official would give that official the authority to accomplish the desired act." *Gijeli*, 717 F.2d at 973 (citing *United States v. Arroyo,* 581 F.2d 649 (7th Cir. 1978) (201c)); *United States v. Anderson,* 509 F.2d 312, 332 (D.C. Cir. 1974) (201(b)); *United States v. Hall*, 245 F.2d 338, 339 (2d Cir. 1957); *United States v. Troop,* 235 F.2d 123, 124-25 (7th Cir. 1956) (201(b)); *Wilson v. United States*, 230 F.2d 521 (4th Cir. 1956); Hurley v. U.S., 192 F.2d, 299 (4th Cir. 1951); *United States v. Lubomski*, 277 F. Supp. 713 (N.D. Ill. 1967)). In *Gijeli*, the defendant's intent was to bribe an ATF agent to release a state prisoner so the prisoner could return to Albania. 717 F.2d at 969-70. After meeting with internal affairs and a state detective, the ATF agent recorded the conversations with the defendant and, once the bribery money was paid, the defendant and his co-defendant were arrested. *Id.* The defendant argued that it was not a federal offense to offer to pay a bribe "to an official of the United States for the performance of an act which would violate state law but which does not violate a statute of the United States and is not a part of an official duty." *Id.* at 971. He further contended that since the ATF agent had no duty with respect to the custody of state prisoners and could not use his official position to effect any escape, the requirements of § 201(b)(3) could not be satisfied. *Id.*

However, the Sixth Circuit upheld the defendant's conviction for bribery under § 201 finding that § 201(a) was met because the ATF agent was an employee of a federal agency. *Id.* at 972. The Court explained that "§201(a) imposes no requirement that a bribed 'employee' be acting in 'any official function' before the 'public official' requirement may be satisfied. Rather, the phrase 'in any official function' was intended to modify only 'person acting for or on behalf of the United

States ...' and not officer or employee." *Id.* at 972. In addition, the Court discussed the focus and purpose of the statute, stating that

> Congress enacted § 201(b) to provide a broad deterrent against attempted corruption of public officials by means of bribes. The focus of this section is upon the briber's intent to corrupt, not upon prevention, per se, of the briber's ultimate ends, or upon the bribed individual's ability to effect a result. Because the briber's intent is controlling, it is irrelevant whether that intent was correctly formulated. To limit § 201(b)(3) in the manner suggested by the defendants would excuse bribers of public officials who fully intended to gain an advantage by making a corrupt offer to a public official but were mistaken in their impression of what the public official could lawfully do. The deterrent value of punishing the bad intent of bribers is the same regardless of whether or not the acts to be accomplished are within the scope of the actual lawful duties of the bribed public official and regardless of whether the briber has correctly perceived the precise scope of the official's lawful duties.

*Id.* at 976-77.[2]

c. The Defendant pled guilty to, and the Information and Plea Agreement implicitly incorporated the charge of, attempted bribery.

Although 18 U.S.C. § 201 does not expressly include the word "attempt," at least one circuit has held that the statute covers attempts, which is the conduct that occurs during sting operations involving an undercover agent. *See United States v. Gallo*, 863 F.2d 185, 189 (2d Cir. 1988) (explaining that § 201 covers attempted bribery and public official need not even exist). The Second Circuit explained that

---

[2] In addition, the Second Circuit has declined to import into the statute, 18 U.S.C. § 201(b)(1),

> an additional requirement that a defendant who seeks corruptly to influence a federal official must know by which sovereign the official is employed at the time the bribe is offered. The conduct prohibited by the statute is the corrupt offer of "anything of value to any public official . . . with intent to influence any official act." Though the official must be a federal official to establish the federal offense, nothing in the statute requires knowledge of this fact, which we perceive as a jurisdictional prerequisite rather than as a *scienter* requirement. Nor does the legislative history support appellant's contention as to knowledge. If anything, it suggests that the sole *scienter* required is knowledge of the corrupt nature of the offer and an "intent to influence [an] official act," 1962 U.S. Code Cong. & Admin. News pp. 3852, 3856."

*United States v. Jennings*, 471 F.2d 1310, 1312 (2d Cir. 1973).

> [a]s we have stated, 18 U.S.C. § 201(b) "makes *attempted* bribery a crime, and so long as a bribe is 'offered or promised' with the requisite intent 'to influence *any* official act' the crime is committed." *United States v. Jacobs,* 431 F.2d 754, 760 (2d Cir.1970) (emphasis in original) …. To find such intent, the public official who is the target of the bribe need not be aware of the bribe, *United States v. Johnson,* 621 F.2d 1073, 1076 (10th Cir. 1980), and, in fact, need not even exist. *See United States v. Rosner,* 485 F.2d 1213, 1216 (2d Cir.1973) (affirming conviction where defendant attempted to funnel money to fictitious official).

*Id*. This is consistent with the legislative purpose of § 201 in "preventing the corruption of a federal official." *Gijeli*, 717 F.2d at 972 (citing *Kemler v. U.S.*, 133 F.2d 235, 238 (1st Cir. 1942).[3]

---

[3] The Defendant seems to be arguing a kind of "impossibility defense," but there does not appear to be case law supporting this proposition, except in dicta. *See Ventimiglia v. United States*, 242 F.2d 620, 626 (4th Cir. 1957) (reversing conviction for conspiracy to violate Taft Hartley Act, analogizing that, "if one thinks that a uniformed doorman is a police officer and bribes him not to tag his car, it is no crime, and neither the attempt nor the conspiracy can be, for there is an inherent or legal impossibility of consummating the offense, although the act itself was completed."). However, the holding of *Ventimiglia* is no longer good law. *Costello v. Lipsitz*, 547 F.2d 1267, 1272 n. 21 (5th Cir. 1977); *see also United States v. Browne*, 505 F.3d 1229, 1253 (11th Cir. 2007) (explaining that Ventimiglia was s*uperseded by statute, citing* Labor–Management Reporting and Disclosure Act of 1959, Pub.L. No. 86–257, sec. 505, § 302(a)(2), 73 Stat. 519, 537 (codified as amended at 29 U.S.C. § 186(a)(2)); S. Rep. 86–187, at 13, U.S. Code Cong. & Admin. News 1959, pp. 2318, 2329–30 (noting the addition of subsection (a)(2)'s language in response to *Ventimiglia*)); *United States v. Pecora*, 798 F.2d 614, 622 (3d Cir. 1986) ("The Senate Committee cited *Ventimiglia v. United States,* 242 F.2d 620 (4th Cir.1957), as an example of a loophole that the amendments were designed to close.").

In addition, courts within this Circuit have rejected the *Ventimiglia* impossibility defense as dicta, at least with regard to conspiracy. *United States v. Sumter*, No. CRIM. 3:10-1160-CMC, 2012 WL 6675054, at *3 n. 3 (D.S.C. Dec. 21, 2012) ("Defendant cites *Ventimiglia v. United States*, 242 F.2d 620 (4th Cir. 1957), in support of his argument that because of the ATF's involvement, it was factually impossible for Defendant to be a conspirator in a conspiracy which (Defendant maintains) did not really exists…. *Ventimiglia* is not applicable to the current case and the passage cited by Defendant in his reply brief is dicta."). *Ventimiglia* lends no support to the Defendant here.

An impossibility defense has not been viewed favorably by the Supreme Court in a similar scenario. In *Osborn v. United States*, the U.S. Supreme Court rejected an impossibility defense as it related to influencing a juror under 18 U.S.C. § 1503.12, even where the act would never have been consummated because the defendant was unknowingly dealing through an agent who was reporting to law enforcement. 385 U.S. 323, 332–33 (1966). The Court stated that,

> the argument is made that even if the admissibility and truth of all the evidence against the petitioner be accepted, this conviction must be set aside because his conduct did not constitute a violation of 18 U.S.C. § 1503.12. The basis for this argument is that since [the agent] never in fact approached [the potential juror] and never intended to do so, any endeavor on the petitioner's part was impossible of accomplishment. We reject the argument. Whatever continuing validity the doctrine of 'impossibility,' with all its subtleties, may continue to have in the law of criminal attempt, that body of law is inapplicable here…. If the evidence against the petitioner be accepted, there can be no question that he corruptly endeavored to impede the due administration of justice by instructing [the agent] to offer a bribe to a prospective juror in a federal criminal case.

*Id*.; *see also Meyers*, 692 F.2d at 850 ("Whether the promise was carried out is irrelevant, [] and it is no defense that the promise could not have been carried out either because the official act to be taken was beyond the defendant's authority . . . or had already been taken."). Similarly, here, the Defendant's intent was to corrupt a federal official by bribing him

And, as noted above, even the Sentencing Commission has effectively blessed the conjoining of the attempt to bribe and the commission of the substantive bribery:

> Offenses involving attempted bribery are frequently not completed because the victim reports the offense to authorities or is acting in an undercover capacity. Failure to complete the offense does not lessen the defendant's culpability in attempting to use public position for personal gain. Therefore, solicitations and attempts are treated as equivalent to the underlying offense.

U.S.S.G. § 2C1.1, Commentary, Background. "The statute makes attempted bribery a crime, and so long as a bribe is 'offered or promised' with the requisite intent 'to influence any official act' the crime is committed." *Johnson*, 621 F.2d at 1076 (quoting *United States v. Jacobs*, 431 F.2d 754, 760 (2d Cir. 1970)).

**CONCLUSION**

Therefore, because undercover sting operations are contemplated within the bribery statute and sentencing guidelines, and supported by case law, the Defendant's appeal issue does not raise a substantial question of law that would support his release pursuant to 18 U.S.C. § 3143(b). On the basis of the foregoing, therefore, the Government submits that the Defendant's Release Motion should summarily be denied.

Respectfully submitted,

Stephen M. Schenning
Acting United States Attorney

/s/
David I. Salem
Assistant United States Attorney

Julie A. Finocchiaro
Special Assistant United States Attorney

for a favorable government contract. Regardless of the impossibility of the outcome, the Defendant's intent and action were proscribed by § 201.

6500 Cherrywood Lane
Greenbelt, Maryland 20770
(301) 344-4433

**Certificate of Service**

I HEREBY CERTIFY that on this 15th day of May 2017, I electronically filed the foregoing GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE PENDING APPEAL AND TO STAY IMPRISONMENT PENDING APPEAL AND MEMORANDUM OF LAW IN SUPPORT THEREOF with the Clerk of Court using the CM/ECF System, which will electronically serve the foregoing document on the following parties, who is a registered CM/ECF user:

Albert Y. Dayan, Esq.
Dayan Law Firm PLLC
80-02 Kew Gardens Rd., Ste 902
Kew Gardens, NY 11415
718.268.9400
Email: dayanlaw@aol.com

*Attorney for Defendant*

/s/
David I. Salem
Assistant United States Attorney